Iona R. HOEPPNER, Plaintiff
and Appellant,

v.

UTAH FARM BUREAU INSURANCE COMPANY, Defendant, Third-Party Plaintiff and Respondent,

v.

James H. HOEPPNER, Third-Party Defendant and Respondent.

No. 15845.

Supreme Court of Utah.

May 3, 1979.

Peter Stirba, Salt Lake City, for plaintiff and appellant.

Stephen G. Morgan, Salt Lake City, for defendant, third-party plaintiff and respondent.

WILKINS, Justice:

Plaintiff Iona Hoeppner filed suit in the District Court of Salt Lake County against Defendant Utah Farm Bureau Insurance Company for breach of contract. Plaintiff claimed that she was entitled to recover proceeds under a homeowner's insurance policy issued by the defendant. The defendant moved the Court below for summary judgment, asserting the plaintiff's complaint was barred by a twelve-month contractual limitation period for filing a lawsuit which appears in the policy. Plaintiff appeals this ruling.

As is appropriate on review of a summary judgment, we view the record in a light most favorable to the losing party below.[1] The record before us discloses no dispute between the parties concerning the facts which are material to our opinion.[2] On February 15, 1975, the home of James Hoeppner and plaintiff, then husband and wife, was burglarized. A contract of insurance covering the stolen property, issued by defendant, was then in force. Both James Hoeppner and plaintiff were named as insureds. Shortly after the burglary, they separated and were divorced. Thereafter, James Hoeppner supplied the defendant with proof of the loss as required by the policy.

On February 9, 1976, only six days prior to the anniversary of the burglary, defendant issued a draft in settlement of the claim in the amount of $3,687.00. Unfortunately, the draft was made payable only to James Hoeppner and his attorney; plaintiff, although a co-insured, was not a co-payee on the draft. Plaintiff has never received any portion of the settlement payment made to James Hoeppner.

In February of 1975, just after the burglary, plaintiff had "conversations [with James Hoeppner] related to the need and desirability of an insurance claim being filed for the losses . . . " In January or February of 1976, plaintiff had another conversation with James Hoeppner, who "indicated that there was no reason why Plaintiff needed a copy of the policy as he [James Hoeppner] had already settled the claim with Defendant Utah Farm Bureau Insurance Company." In October of 1976, in a telephone conversation with an employee of the defendant, plaintiff was informed that "the claim had been paid" and that no other payment would be made to her. This was the first time she had been so informed *by the defendant,* although James Hoeppner had advised her earlier that year.

It also appears that plaintiff's copy of the insurance policy remained with James Hoeppner after the burglary and the divorce. The answer of plaintiff to one of defendant's interrogatories, to which there was no contradiction, stated:

She attempted to procure a policy by telephoning the offices of the defendant in May and October of 1975, August and October of 1976, and in April, June and August of 1977. On these occasions, plaintiff was told that she either had the wrong policy number, or that the policy was unavailable, or was at the warehouse, and that it would be mailed to her. Finally, in August of 1977, plaintiff went to the offices of the defendant in Salt

1. *Durham v. Margetts,* Utah, 571 P.2d 1332 (1977).

2. While counsel for plaintiff urges that the record does contain disputed issues of material fact, we are unable to discover them.

Lake City, Utah, and was able to procure . . . the policy (or a sample of the policy).

On September 27, 1977, plaintiff brought suit against defendant for breach of contract. Approximately thirty-one months had elapsed since the burglary, nineteen months since the payment of the settlement draft to James Hoeppner, and nineteen or twenty months since plaintiff was informed by James Hoeppner that the claim had been paid. Also approximately eleven months had elapsed since defendant informed her of the claim's payment. However, only a period of about one month had passed since plaintiff obtained the copy of her policy.

Defendant's motion for summary judgment was based on the following provision of the insurance contract:

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and *unless commenced within twelve months next after inception of the loss.* [Emphasis added.]

The Court below ruled that the twelve-month limitation period had expired before the lawsuit was filed and, therefore, that plaintiff's complaint was barred.

Plaintiff's counsel attacks this result with three theories: (1) that defendant is estopped to assert the contractual limitation as to a bar to plaintiff's action; (2) that the running of the contractual limitation period should be tolled until the time of plaintiff's claim was formally denied by defendant in October of 1976 (plaintiff's action was filed within twelve months of that time); and (3) that plaintiff should be afforded a "reasonable time" after this cause of action arose.

█ We have previously ruled that contractual limitations of time in which to bring actions on insurance policies, "if reasonable, are valid, binding and enforceable.

. . ." [3] But these contractual limitations are looked upon with some disfavor, since they operate in derogation of our statutory six-year limitation on actions pertaining to written instruments.[4]

Our decision in this matter requires only that we address plaintiff's third point, which is dispositive. And pursuing this point, we conclude that the plaintiff is entitled to a reasonable extension of time beyond August 1977 when this cause of action arose. It is the receipt of the policy in August 1977 which triggered the cause of action to arise.[5]

█ The record here indicates that plaintiff did not have a copy of the policy, that she repeatedly asked the defendant to provide her with a copy, and that the defendant failed to do so until August 1977. Nor is there any indication that the defendant gave plaintiff any notice of the contractual limitation provision during the time she was without a copy. We note that once plaintiff had finally obtained a copy, she quickly initiated suit, viz., in September 1977. It would be inequitable to permit the defendant to enforce the contractual limitation provision of a policy when defendant knew or should have known that plaintiff was unaware of that limitation because she had no copy of the policy. And we conclude that plaintiff—as a matter of law—acted within a reasonable period of time in commencing this action under these facts.

The summary judgment is reversed and the cause is remanded for trial on the matter of damages. Costs to plaintiff.

MAUGHAN and STEWART, JJ., concur.

HALL, Justice (concurring and dissenting):

I concur in vacating the summary judgment and remanding the case for trial. However, we should not compound the er-

---

3. *Anderson v. State Farm Fire & Ca. Co.,* Utah, 583 P.2d 101, 103.

4. Id.

5. *Heezen v. Hartland Cicero Mutual Ins. Co.,* 63 Wis.2d 449, 217 N.W.2d 272 (1974); *Lanier v. Coastal States Life Ins. Co.,* 106 Ga.App. 802, 128 S.E.2d 505 (1962); *Fredericks v. Farmers Reliance Ins. Co. of N. J.,* 80 N.J.Super. 599, 194 A.2d 497 (1963).

ror of the trial court by ruling on the issue of *liability* as a matter of law. Rather, and as urged by the appellant, I am of the opinion that material issues of disputed fact exist pertaining to liability.[1] Consequently, I would remand for the purpose of trial on both questions: liability and damages.

CROCKETT, C. J., concurs in the views expressed in the concurring and dissenting opinion of HALL, J.

---

1.  Consisting of, but not necessarily limited to, waiver, estoppel, and breach of contract on the part of the insurance company.